UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JOHN IRA GRANT                                CIVIL ACTION NO. 09-cv-0436

VERSUS                                        JUDGE HICKS

WARDEN, LOUISIANA STATE                       MAGISTRATE JUDGE HORNSBY
PENITENTIARY

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury convicted John Ira Grant ("Petitioner") of possession of cocaine with intent to distribute. He was adjudicated a third felony offender and sentenced to life imprisonment without benefits. He challenged his conviction on direct appeal, State v. Grant, 890 So.2d 689 (La. App. 2d Cir. 2004), writ denied, 920 So.2d 233 (La. 2006), and in a post-conviction application. He now seeks federal habeas corpus relief on several grounds. It is recommended, for the reasons that follow, that his petition be denied.

**Sufficiency of the Evidence**

Shreveport police officer J. J. Silva, who was working with a DEA task force, was conducting rolling surveillance in the Cedar Grove area when he saw Petitioner driving a maroon-colored Chevrolet Camaro down Fairfield Avenue. Petitioner turned on West 79th Street and stopped curbside in front of a house. Silva saw Petitioner walk to the rear of the house, return with an object in his hand, and get back in his car. Silva testified that this aroused his suspicion because, based on knowledge gained through investigations and

surveillance, he knew that drug dealers sometimes keep narcotics outside of a residence and will at times retrieve the drugs and take them to other locations.

Silva radioed marked police units to come to the location and attempt to make a traffic stop. Silva followed the Camaro from the location in front of the house to near the Cambridge Court Apartments on Mansfield Road. He saw Petitioner commit minor traffic violations along the way. Tr. 94-103.

Shreveport police officer Steve McKenna testified that he responded to Silva's radio request. McKenna, in a marked patrol car, got behind the suspect Camaro and saw Petitioner not use a turn signal before turning into the Cambridge Court Apartments. McKenna stopped Petitioner's car and told Petitioner he was being stopped for the traffic offense. Petitioner did not possess a driver's license and was acting nervously. McKenna obtained Petitioner's consent to search his car for his driver's license. He found a cell phone box on the passenger floorboard, which he placed on the seat as he continued to look underneath the seats. When he later opened the box, he saw multiple green baggies of suspected cocaine. After a brief struggle, Petitioner was placed under arrest. Officer McKenna did not find any money, empty baggies, or scale in the car. Tr. 128-38.

Agent Silva took possession of the seized drugs. He testified that there were 32 packages in total that weighed 47.6 grams. He said the maximum dollar value of the cocaine at that time in February 2002 was approximately $4,760. Tr. 103-07. He testified that drug users typically do not have the money to purchase such a quantity and, if they did, they

would not be likely to have that amount on them packaged in the fashion that it was. A typical user would purchase a dime rock, worth only $10. Tr. 119-20.

Mary Gay, a forensic chemist at the DEA South Central Laboratory in Dallas, was tendered without objection as an expert in the field of forensic chemistry. She testified that the substance in the bags was cocaine hydrochloride, cut with lidocaine, and the powder had a net weight of 41.4 grams. Some additional amount was destroyed by the testing process. Tr. 138-48.

Shreveport police officer Michael Tong, supervisor for the mid-level narcotics unit and with many years of experience and training in drug-related law enforcement, was accepted as an expert in the area of street-level narcotic crimes and investigation. Tr. 149-59. He testified that a typical cocaine user rarely keeps more drugs than what he needs at the time, and he usually purchases a dime bag worth $10. If the streets are dry and drugs are hard to find at the time, a typical user may buy three or four dime bags at once. Each dime bag will supply perhaps two doses, depending on severity of the user's habit. A dealer, on the other hand, will buy in larger quantities such as big eights, which are four and half ounces. They will then cut that to different amounts and place it in different size bags. It is often placed in dime-size bags containing only a tenth of a gram, or it might be packaged in other quantities such as eight balls, which is an eighth of an ounce or 3.5 grams. Tr. 159-63.

Tong testified that the smaller green bags taken from Petitioner most likely represented eight balls. (This was an overestimation of the amount in each bag, as discussed below.) Tong noted that the cocaine was still in "kilo form," meaning it was in chunks

broken off a kilogram of compressed cocaine (the form the drug is often in when it arrives in this country), and it had not yet been broken down for personal use. If each of the 32 bags was an eight ball, each could be "dimed out" to make 35 dime bags, amounting to roughly 900 doses. Tong estimated the street value for 47.6 grams of cocaine at $100 per gram, totaling over $4,700. He said the cocaine was consistent with how dealers purchased the drug but not what a user would buy. Tr. 166-68.

It did not surprise Officer Tong that no money was found during the stop because dealers found with large quantities have often just spent their cash to re-up or resupply. He had also found that many dealers were beginning to keep their drugs and money in separate locations so that they might not lose everything if caught by the police. He observed that a person who consumes cocaine and has cocaine on their person would more than likely have something on them to consume the drug with, either a straw, needle or spoon. Tr. 168-69.

Petitioner was convicted under La. R.S. 40:967(A), which makes it illegal to knowingly and intentionally possess cocaine with a specific intent to distribute it. When the state appellate court reviewed a challenge to the sufficiency of the evidence on direct appeal, it said that when specific intent to distribute is based on circumstantial evidence, as in this case, the State must prove that the amount of the substance or the manner in which it was carried was inconsistent with personal use. Factors for determining whether intent to distribute exists include: (1) packaging in a form usually associated with distribution; (2) evidence of other sales or attempted sales by defendant; (3) a large amount or quantity of the drug such as to create a presumption of intent to distribute; (4) expert or other testimony that

the amount was inconsistent with personal use; and (5) the existence of any paraphernalia, such as baggies or scales, evidencing an intent to distribute. State v. Grant, 890 So.2d at 694-95.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

The state appellate court recited the Jackson standard, noted the elements of the crime, and reviewed in detail the evidence discussed above. It noted that four out of the five listed factors supported a finding of intent to distribute, with the only factor missing being evidence of other sales. Reviewing the evidence in a light most favorable to the prosecution, the appellate court found that intent to distribute was proven beyond a reasonable doubt. State v. Grant, 890 So.2d at 695.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency

challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012).

Petitioner, in his habeas memorandum, disputes that the State adequately proved intent to distribute. He does not, however, offer any argument beyond the conclusory as to how the evidence was insufficient. The record includes abundant proof of multiple factors that suggest an intent to distribute, rather than merely possess for personal consumption, the large quantity of drugs found in Petitioner's car. The state court's decision was not an objectively unreasonable application of the deferential Jackson standard, so habeas relief is not available on this claim.

**Prosecutorial Misconduct**

Petitioner argued in a post-conviction application that certain parts of the prosecutor's closing argument were inappropriate. The prosecutor began his opening statement by reminding the jury of its commitment during voir dire to enforce the drug laws. He stated that Petitioner "is a drug dealer and now is your chance to help me put him away and get one more off of the streets." Tr. 181. The prosecutor reminded the jury of the burden he had and then said:

> I would submit to you that I have utterly destroyed the presumption of innocence. There is no other reasonable conclusion that if you possess this much cocaine in this form that you had anything other than the specific intent to distribute that cocaine. Tr. 181.

Defense counsel made arguments about purchasing in bulk from shopping clubs or buying a case of beer and not pouring each individual can into a large container. In rebuttal, the prosecutor reviewed the evidence and urged that the prosecution had proved everything except an actual sale to a customer. He then stated:

> Other than that, we've peppered him all the way over. His presumption of innocence is gone. That's what the trial is. That's why you see this, so that you know that what you have before you is a drug dealer.

The prosecutor also said, "and like that guy over there who wants to give it to whoever he can sell it to for a profit, that's what he's doing and that's what he's asking you to disregard." Tr. 194.

Petitioner argued in his post-conviction application that the prosecution went outside the scope of permissible closing argument. He cited a Louisiana Rules of Criminal Procedure (Tr. 354-56), but habeas relief is not available for mere errors of state law. Estelle v. McGuire, 112 S.Ct. 475, 479-80 (1991). He also contended that the prosecutor's references improperly commented on Petitioner's failure to testify, because Petitioner was the only one who could have testified to rebut the State's case. The trial court found the argument was properly limited to the evidence admitted, conclusions of fact that could be drawn therefrom, and to the law applicable to the case. He added that reversal of a conviction for improper argument is not appropriate under state law unless the court is convinced that the argument influenced the jury and contributed to the verdict. He found relief was not available. Tr. 532-33. The trial court did not specifically address the Fifth Amendment claim. The appellate court summarily denied a writ application, citing the

"lengthy and well-reasoned ruling" of the district court and the lack of any additional arguments by Petitioner. Tr. 773(A). The Supreme Court of Louisiana denied writs without comment. Tr. 1060.

A prosecutor's comment on a defendant's failure to testify violates the Fifth Amendment right against self-incrimination. Griffin v. California, 85 S.Ct. 1229 (1965). But the remarks made by the prosecutor must be considered in context. U.S. v. Delgado, 672 F.3d 320, 335 (5th Cir. 2012) (en banc). The Fifth Amendment is violated if the prosecutor's manifest intent must have been to comment on the defendant's silence or if the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence. Cotton v. Cockrell, 343 F.3d 746, 751 (5th Cir. 2003). There is no manifest intent to comment on a defendant's failure to testify if there is another equally plausible explanation for the prosecutor's remarks. The relevant question is not whether a jury possibly or even probably would construe the argument as a comment on the defendant's silence, but whether a jury would necessarily construe it as such. Lee v. Michael, 2012 WL 1621369 (5th Cir. 2012).

The prosecutor in this case merely pointed out and emphasized the strength of the State's case. None of the challenged argument noted a lack of defense or otherwise drew any attention to the fact that Petitioner did not testify. The prosecutor's arguments might be comments on the failure of the defense, as opposed to the defendant, to counter or explain the State's evidence, but that kind of argument does not infringe the Fifth Amendment privilege. See Montoya v. Collins, 955 F.2d 279, 287 (5th Cir. 1992); Lee v. Michael, supra.

Petitioner has not shown that the state court's adjudication of this claim was objectively unreasonable in light of the facts and clearly established federal law as required for habeas relief when a state court has adjudicated a claim on the merits. 28 U.S.C. § 2254(d). De novo review may be appropriate because the state court did not specifically address the Fifth Amendment claim, but the claim fails under either standard.

**Ineffective Assistance of Counsel**

    **A.    Standard of Review**

Petitioner asserts claims of ineffective assistance of counsel. To prevail on such a claim, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner's claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. at 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

### B. Overburdened by Caseload

Petitioner argues that his defense counsel told him that he was burdened with over 400 cases and needed Petitioner to assist him in any way possible. A mere conclusory assertion that an attorney had a heavy caseload, without specification of any particular error, does not support a claim of ineffective assistance of counsel that warrants vacating a conviction on habeas review. Voisin v. Rader, 2011 WL 1540443 (W.D. La. 2011); Robinson v. Cain, 2011 WL 890973, *9 (E.D. La. 2011). Petitioner does articulate some specific shortcomings that he contends were caused by the heavy caseload, and those particular claims will be addressed below.

### C. No Motion to Quash

A grand jury indictment was not required under Louisiana law to institute the charge of which Petitioner was convicted. The district attorney issued a bill of information that charged Petitioner with possession with intent to distribute a controlled dangerous substance

classified in Schedule II, to-wit: cocaine. The bill also cited the date of the offense and the statute under which the charge was made. Tr. 5.

Petitioner argued in his post-conviction application (Tr. 343) that his counsel was ineffective because he did not move to quash the bill on the grounds that it did not reflect the amount of cocaine allegedly possessed. The state court rejected this argument because the weight of the cocaine was not an element of the crime under the statute charged, so the bill was not defective. Tr. 527-28.

A conviction or possession of cocaine with intent to distribute carries a sentence of two to thirty years. La. R.S. 40:967(B)(4)(b); State v. Cummings, 71 So.3d 482, 483 (La. App. 2d Cir. 2011). The statute contains other penalty provisions for simple possession, and the sentencing range for possession may be increased depending on the amount of drugs possessed. Petitioner was not charged under a provision of the statute that made his sentence depend on the amount of cocaine he possessed, so the bill of information was not deficient in this regard, and counsel was not deficient when he did not file a motion to suppress. Assuming the absence of the amount of drugs was a defect in the bill, if counsel did file a motion to quash the prosecutor could have cured it with the stroke of his pen, so there is no likelihood of prejudice. The state court's decision of this claim was not an objectively unreasonable application of Strickland, so relief is not permitted.

### D. No Independent Expert to Weigh Cocaine

Petitioner argues that Officer Tong's testimony was mistaken in that the 32 individual bags were not eight balls with an average weight of 3.5 grams. Tong's erroneous assumption

would result in an amount of cocaine greater than what was actually seized. Petitioner argues that counsel was ineffective because he did not hire a defense expert to present the actual weight and content of each package of cocaine.

On post-conviction application, the trial court noted that the DEA chemist, Ms. Gay, had already testified regarding the actual weight of the cocaine inside the bags, which was 41.4 grams. Officer Tong's assumption that each bag was an eight ball would have resulted in a greater overall weight, but the weight testified to by Ms. Gay, the only witness who said she weighed the cocaine, would have produced more than 400 dime bags and had a street value of over $4,000. The judge found no basis to believe that any additional weighing or expert testimony on that subject would have resulted in a different verdict. Tr. 529-30.

This court must decide the claim based on the evidence in the state court record. Pape v. Thaler, 645 F.3d 281, 288 (5th Cir. 2011). There is nothing in the record to undermine the testimony that the cocaine weighed 41.4 grams and was divided into 32 bags, which is strong evidence of intent to distribute. There is no reasonable likelihood that, had counsel had an expert or simply used cross-examination to correct Officer Tong's mistake, the outcome would have been any different. Petitioner was proved to possess a large amount of cocaine that was packaged in a manner more consistent with distribution than personal consumption. The state court's rejection of this issue was not an objectively unreasonable application of Strickland.

### E.     Concession of Possession

The prosecutor argued in closing that the only reason for the possession of such a large amount of cocaine was intent to distribute. Defense counsel responded that not all drug addicts are of limited means and may, like a shopper at a wholesale club, buy large quantities for personal use. In the course of the argument he admitted that his client "did possess the cocaine. I don't - - I don't argue that point at all." Tr. 191.

Petitioner argued in his post-conviction application that counsel was ineffective by impermissibly conceding guilt of simple possession of cocaine. Tr. 345-46. The trial court rejected the argument because the concession was a valid trial strategy that, in light of the overwhelming evidence of possession, might gain some credibility with the jury. Tr. 531-32.

A strategic concession of guilt of a lesser crime or even in the guilt phase of a capital case is not the equivalent of a guilty plea, as urged by Petitioner. Florida v. Nixon, 125 S.Ct. 551 (2004). But even when it is wise strategy, such a concession before the factfinder against the wishes of the client, can be deficient performance. Haynes v. Cain, 298 F.3d 375 (5th Cir. 2002) (en banc). Petitioner has not pointed to any evidence in the state court record that he did not consent to the strategy employed by defense counsel. More important, he has not articulated how he was prejudiced by the concession, which is required for habeas relief on such a claim. Haynes, 298 F.3d at 382-83. There is no reasonable probability that, but for counsel's comment in his closing argument, the verdict would have been different. Thus, the state court's decision was not an objectively unreasonable application of Strickland.

**F. No Objection to Closing Arguments**

Petitioner argued on post-conviction application that his counsel was ineffective because he did not object to allegedly improper closing argument by the prosecutor that (1) made several "inferences" about Petitioner not taking the stand, (2) referred to Petitioner as a drug dealer, and (3) turned the argument into a plebiscite on crime and urged the jurors to do their duty and remove drug dealers from the streets. Tr. 346-51. It was found above that the prosecutor did not improperly comment on Petitioner not testifying, and the state court found the other challenged components of the closing argument to be within permissible bounds.

Wise defense counsel often employee the strategy of refraining from objecting to every possible aspect of prosecutor's closing argument because it risks making the jury dislike counsel for the constant interruptions and that the prosecutor will return the favor when defense counsel is attempting to plead his client's case. None of the challenged aspects of the prosecutor's closing arguments were so apparently objectionable and harmful that counsel should have overcome such hesitations, leapt from his chair, and objected. And there is no reasonable probability that such an objection would have resulted in a different verdict. Relief is not permitted on these arguments.

### G. No Motion to Suppress

Petitioner argued in his post-conviction application that counsel was ineffective because he did not file a motion to suppress the cocaine. He argued that Officer McKenna should have simply issued a traffic citation for failure to use a turn signal and driving without a license, and McKenna lacked any reasonable suspicion or probable cause to search the car.

Tr. 341-43. The state court rejected this argument because such a motion to suppress would not have been successful. Tr. 529.

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 106 S.Ct. 2574, 2583 (1986); Shed v. Thompson, 2007 WL 2711022, *5 (W.D. La. 2007).

The evidence in the state court record is that the officer saw a traffic violation and made the stop. Petitioner argues that this was a pretext, but that does not warrant suppression of evidence found during the stop. Whren v. U.S., 116 S.Ct. 1769 (1996). A traffic violation provides an objective basis for the initial stop. The fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for Fourth Amendment purposes. U.S. v. Harris, 566 F.3d 422, 434 (5th Cir. 2009). Accordingly, there is no factual or legal support for this final habeas argument.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within **fourteen (14) days** from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 12th day of July, 2012.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE